■ In the Matter of Town of CHEEKTOWAGA, Respondent, v CITY OF BUFFALO, Appellant, and VILLAGE OF SLOAN, Respondent.—Judgment insofar as appealed from unanimously reversed, on the law, without costs, and award of damages vacated. Memorandum: The question presented on this appeal is whether the City of Buffalo may be held liable for damages suffered by the Town of Cheektowaga as a result of the acts of the city's officers and employees in enforcing a city ordinance which excluded from all city streets except those designated as truck routes "Any truck having a

total combined gross weight * * * in excess of five tons" (Buffalo City Ordinances, ch 60, § 40, subd [2]). The ordinance further provided, *inter alia,* that "Such exclusion shall not be construed * * * to prevent the necessary operation of trucks while in use by * * * sanitation or street maintenance services". Between January 2, 1975 and August 8, 1975 refuse collected in the Town of Cheektowaga regularly was transported in trucks via East Lovejoy Street in the City of Buffalo to a refuse transfer station in the Village of Sloan. East Lovejoy Street was not designated as a truck route and was posted by the city to prohibit its use by trucks of a gross weight, including load, in excess of five tons. Town of Cheektowaga sanitation trucks were clearly in violation of the ordinance unless the same was not to be applied to them pursuant to the language exempting such vehicles from its coverage. The city Commissioner of Transportation determined that the language exempting certain types of trucks from the impact of the ordinance "was intended to exempt vehicles which provide a service to dwelling units on a given street, such as fire service, collection of garbage for the houses on the street and that type of service." On August 9, 1975, pursuant to the commissioner's authorization, police issued traffic summonses to the drivers of Cheektowaga sanitation trucks traveling on East Lovejoy Street, and the town was thereafter required to turn to a more expensive method of disposing of its refuse. The claim for damages is limited to a specific time period, however, because of a later amendment to the city ordinance. The city appeals only from that part of the judgment which awarded damages in the sum of $4,243.35. It asserts that the determination of the Commissioner of Transportation which precipitated the issuance of the traffic summonses was discretionary and quasi-judicial in character, thus rendering both him and the municipality immune from liability. We agree (see *Shanbarger v Kellogg,* 35 AD2d 902, mot for lv to app den 29 NY2d 485, app dsmd 29 NY2d 649, cert den 405 US 919; *Movable Homes v City of North Tonawanda,* 56 AD2d 718). It is long settled that "no public officer is responsible in a civil suit for a judicial determination, however erroneous or wrong it may be, or however malicious even the motive which produced it" *(East Riv. Gas-Light Co. v Donnelly,* 93 NY 557, 559; *Rottkamp v Young,* 21 AD2d 373, 375, affd 15 NY2d 831). The traffic citations were issued to the town's truck drivers upon the direction of the city's Commissioner of Transportation, acting within the scope of his authority. Whether his interpretation of the ordinance was erroneous is inconsequential. His direction to the police to enforce the ordinance reflected a policy judgment, quasi-judicial and discretionary in character (cf. *Southworth v State of New York,* 62 AD2d 731, 743). The policy considerations which protect a public officer from liability "dictate the same protection for the municipality whose interests are served by the acts of the officer" *(Rottkamp v Young, supra,* p 377). The interpretation and consequent enforcement of a traffic ordinance as presented here was an exercise of sovereign power. (Appeal from judgment of Erie Supreme Court—injunction.) Present—Moule, J. P., Simons, Dillon, Hancock, Jr., and Schnepp, JJ.